UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-155 (ABJ) |
| | : | |
| JACOB GAVIN HILES, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Mr. Hiles, through his attorneys, Alexander H. Bell and Charles R. Haskell, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C. Section 3553(a), submits this memorandum to aid the Court at sentencing and hereby notifies the Court that he has received and reviewed the Final Presentence Report ("Final PSR"), ECF No. 32, prepared in this case. After carefully reviewing the PSR with Mr. Hiles, he has no objections. Mr. Hiles requests that this Honorable Court impose a sentence of probation with community service to account for:

I. His cooperation with the federal government in regard to his case, his cousin's case and another case where he provided grand jury testimony for the U.S. Attorney's Office;

II. His lack of preparation or planning prior to January 6, 2021, to be part of the Capitol breach;

III. His peaceful, non-destructive, and non-violent behavior on January 6, 2021, both outside and inside the Capitol Building; and

IV. His family circumstances as sole caretaker of his teenage daughter.

Mr. Hiles comes before this Honorable Court having plead guilty on September 9, 2021, to count 4 of the Information filed on February 24th, 2021, charging him with a violation of Title

1

40 U.S.C. §5104(e)(2)(G). A sentence of 12 months of probation, with community service, is a reasonable sentence that is in line with the goals of Title 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary." Under the facts of this case, such a sentence will provide just punishment, protect the public, and provide adequate deterrence.

I. **BACKGROUND**

Mr. Hiles is a 42-year-old charter boat captain from Virginia Beach, Virginia. He was born nearby in Norfolk, Virginia and has resided in Hampton Roads his entire life. Mr. Hiles has been a sole proprietor of his charter fishing business for just over twenty years and by most accounts is a very successful charter captain. Several years ago, he tied for first place in the White Marlin Open which is the largest marlin tournament in the world based in Ocean City, Maryland.

Mr. Hiles graduated from Kempsville High School in 1997. Final PSR at ¶ 55. He has had sole custody of his 13-year-old daughter for the vast majority of her life and she has virtually no relationship with her mother who has lived in Florida since 2009. Id. at ¶ 44. Mr. Hiles stated that his daughter is "the best thing that has ever happened in my life." Id. at ¶ 45. Mr. Hiles and his daughter live in a home that he bought five years ago on an acre of land that backs up to a pond. Id. at ¶ 46.

II. **JANUARY 6, 2021**

Mr. Hiles never planned to enter the Capitol on January 6, 2021. After listening to President Trump's speech, Mr. Hiles followed a large crowd to the Capitol grounds and joined in what he thought would be a peaceful protest.

At approximately 2:30 p.m. Mr. Hiles was standing on a brick wall watching the protesters enter the Capitol. The surge of protestors knocked Mr. Hiles onto the ground, and he rolled his ankle resulting in a sprained ankle that made it difficult for him to walk. At that point Mr. Hiles

was worried about his ankle and wanted to get back to his vehicle to go home. Fifteen minutes later, as Mr. Hiles stood back away from the surge of protestors, he asked a Capitol Police officer how he could exit the front lawn of the Capitol because he had injured his ankle. The officer did not say anything but pointed to the front door of the Capitol that was open with a line of protestors going inside. Therefore, Mr. Hiles decided to go where the officer instructed hoping that would be the quickest way back to his vehicle.

Mr. Hiles entered the Capitol and interacted with several Capitol Police Officers who never told him to exit the premises. Mr. Hiles made his way to the Rotunda where a crowd was singing the Star-Spangled Banner and God Bless America. Mr. Hiles remained in the Rotunda for roughly five minutes before he asked a Capitol Police Officer how he could leave. The officer instructed Mr. Hiles how to exit the building then Mr. Hiles followed his instructions and exited the Capitol.

While in the Capitol Mr. Hiles did not observe or participate in any destructive behavior towards the Capitol Building or negative behavior towards the police officers. Mr. Hiles was not violent, carefully observed the situation around him, and acted with decency knowing he was in a sacred place.

On or about January 15, 2021, the United States Attorney for the District of Columbia filed a Criminal Complaint against Mr. Hiles. *See* ECF No. 1. Mr. Hiles learned of the Criminal Complaint that same day, so he immediately contacted the local Federal Bureau of Investigation ("FBI"). The FBI agent that spoke with Mr. Hiles recommended that Mr. Hiles turn himself in the following Tuesday, January 19, 2021, so he did not have to spend the holiday weekend waiting to be released on bail.

On the morning of January 19, 2021, Mr. Hiles fully cooperated with the FBI. He surrendered as instructed, provided a lengthy interview regarding his actions, consented to

searches of his property and house, including his cell phone--which he did not attempt to delete over the weekend.

On January 20, 2021, Mr. Hiles was released on personal recognizance.

On January 22, 2021, Mr. Hiles made his initial appearance in the United States District Court for the District of Columbia and was given several conditions while he remained on bond including weekly check ins with a pretrial services officer. *See* ECF No. 5. He has remained in compliance with those conditions throughout his case. Mr. Hiles admits that he forgot to call his pretrial services officer several times as instructed but it was inadvertent, and it is important to note that his pretrial services officer never felt the need to report that to this Honorable Court.

On February 24, 2021, the U.S. Attorney for District of Columbia filed a four count Information charging Mr. Hiles with four misdemeanor offenses related to his conduct on January 6. *See* ECF No. 9.

On July 27, 2021, Mr. Hiles appeared before this Honorable Court for arraignment via video conference. He entered a plea of not guilty.

On September 9, 2021 Mr. Hiles pleaded guilty. *See* ECF Nos. 23-24.

III. **MR. HILES HAS PROVIDED MORE COOPERATION THAN ANY PREVIOUSLY SENTENCED DEFENDANT**

As AUSA Dorhmann stated in the Government's Sentencing Memorandum, "no previously sentenced defendant has provided assistance of the degree provided by the defendant in this case." Government's Sentencing Memorandum, ECF No. 34, at 27. Ever since Mr. Hiles learned of the warrant for his arrest, he has taken full responsibility for his actions and has done everything he can to aid the government. He was nothing short of fully cooperative ever since he learned of the Criminal Complaint on January 15, 2021. Mr. Hiles has kept in constant contact with his attorneys and his pretrial services officer. He has not violated the conditions of bond in

4

any way and has appeared at every hearing before this Honorable Court.

Not only has he been cooperative with the FBI and Assistant U.S. Attorney for the District of Columbia regarding his charges, but he has been fully cooperative in helping the FBI and the U.S. Attorney's Office in prosecuting his cousin's case and another case related to January 6, 2021.

In that case the U.S. Attorney's Office brought charges against a Capitol Police Officer relating to the Officers conduct after the events of January 6, 2021. The Capitol Police Officer reached out to Mr. Hiles telling him to delete certain posts on social media because the federal government is planning to file criminal charges against everyone that entered the U.S. Capitol on January 6, 2021. It is important to note, that Mr. Hiles did not take any of Officer Riley's advice.

On or about August 2, 2021, with very short notice, Mr. Hiles voluntarily and candidly participated in a Zoom interview with two FBI Agents and two Assistant U.S. Attorneys for the District of Columbia regarding the government's case against Officer Riley. On or about October 7, 2021, Mr. Hiles took more time off work and left his home in Virginia Beach around 4:00 a.m. in order to testify at 10:00 a.m. in the District of Columbia for the government in the grand jury proceeding regarding Officer Riley. By all accounts, Mr. Hiles' grand jury testimony was crucial in the government's case against Officer Riley.

In the Government's Sentencing Memorandum, Ms. Dohrmann stated, "[a]bsent Hiles' forthrightness, both in preserving records of communications by him and Riley, and in addressing sensitive inquiries from law enforcement, prosecution of Riley—a now-former U.S. Capitol Police Officer—may not have been possible." Id. at 21. Not only did Mr. Hiles offer his complete and utter cooperation but he did so without any offer of a cooperation agreement or any specific benefit extended by the government. Id.

5

IV.  **LEGAL STANDARD**

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). The court shall also consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). Section 3553(a)(1-7) further sets forth the factors that the Court must consider in fulfilling this provision:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed;
3. The kinds of sentences available;
4. The kinds of sentence and the sentencing range established for…;
5. Any pertinent policy statement…;
6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

V.  **FACTORS CONSIDERED PURSUANT TO 18 U.S.C. §3553(a)**

At sentencing, a district court must appropriately frame "its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in §3553(a)(2)." *Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (quoting §3553(a)).

A.  **Nature & Circumstances of the Offense & the History and Characteristics of Mr. Hiles**

After Mr. Hiles walked freely into the Capitol, he was in disbelief of the general atmosphere inside. Compared to the chaos occurring outside the Capitol, and the joyfulness that everyone around him exuded once inside, it was remarkable to Mr. Hiles how everyone near him in the Capitol was polite and courteous.

Mr. Hiles conduct was far less damaging or egregious than many other class B misdemeanor cases that have been filed in this Court with regard to January 6, 2021.

First, Mr. Hiles entry into the Capitol was not preplanned or coordinated with anyone else. His clear intention was merely to attend the rally and he never planned to enter the Capitol.

Second, Mr. Hiles did not incite others to commit acts of violence or destruction.

Third, Mr. Hiles did not engage in any violence or questionable conduct towards law enforcement. Instead, Mr. Hiles aided them by providing masks, hand wipes and a first aid kit after they had been exposed to and were suffering from the effects of the tear gas. Further, Mr. Hiles told the FBI that every interaction he had with the police was a positive experience.

Fourth, Mr. Hiles did not destroy or steal any property from the Capitol.

Fifth, Mr. Hiles remained in a limited part of the Capitol building for a limited period of time and left on his own accord. There is no evidence, and the government does not allege, that Mr. Hiles entered any rooms or offices in the Capitol, the Senate or House Chamber, or any other area that he was specifically told not to enter.

Mr. Hiles voluntarily turned himself in when instructed to do so. He fully acknowledged his misconduct by answering all questions by the FBI agents when he was arrested, expressed remorse and contrition, and voluntarily turned over evidence including his smart phone that he did not alter even though he had ample time to do so since the FBI instructed him to turn himself in three days after he spoke to the FBI on the telephone.

In addition, Mr. Hiles gave the FBI the name of his cousin, James Matthew Horning, who was later charged for his involvement on January 6, 2021. More notably, Mr. Hiles could not be more cooperative in assisting the U.S. Attorney's Office in prosecuting a case against a Capitol Police Officer.

The government concedes that Mr. Hiles committed no violent acts and destroyed no property. Much of his time in the Capitol has been documented with his own cell phone video footage and the CCTV footage and it clearly shows that he treated the Capitol and its occupants with nothing other than respect. He entered and exited through doors and when he spoke to police officers, it was non-confrontational and respectful, even grateful. Mr. Hiles witnessed a fair amount of violence outside of the Capitol which was extremely shocking to him. He is left with deep regret, fear, shame, and remorse. Mr. Hiles shared much of those feelings with Your Honor during his guilty plea hearing.

B. **Need for the Sentence Imposed**

 1. **General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to afford adequate deterrence to criminal conduct**

The purposes of sentencing include rehabilitation, incapacitation, punishment, general deterrence, and specific deterrence.

In Mr. Hiles case, there is no need for incapacitation, specific deterrence, or rehabilitation. Others will be adequately deterred by the sentences given to those who perpetrated the violence and mayhem at the Capitol. Restriction of freedoms through probation and community service combined with the negative publicity and collateral consequences for those convicted of a misdemeanor will also provide adequate deterrence. Unnecessarily harsh sentences imposed on those similarly situated to Mr. Hiles who were less culpable will not encourage respect for the law or promote just punishment. A period of probation is sufficient punishment and will deter others

as Mr. Hiles' liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on his personal freedoms.

### 2. Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the publicfrom further crimes of the defendant

Mr. Hiles' likelihood of recidivism is very low.  He has repeatedly expressed genuine remorse and contrition since January 6, 2021.  Mr. Hiles has cooperated fully with law enforcement, turned over evidence voluntarily, given information to the FBI about another participant that they did not have before, given information to the FBI about a Capitol Police Officer who was investigated for his actions after January 6, 2021, voluntarily testified before the grand jury regarding the Capitol Police Officer and he accepted the plea offer with no hesitation.  His acceptance of responsibility was complete and without reservation.  He has never tried to excuse or minimize his behavior.

A punishment of active incarceration in this case is going to have the exact opposite effect than what is in the interest of justice.  The alternatives to incarceration are appropriate and serve the ends of justice.  In addition, it leaves his teenage daughter in the stable home she is currently residing in with her father.  Her mother divorced Mr. Hiles and moved to Florida when she was very young and Mr. Hiles' daughter has virtually no relationship with her mother; therefore, taking her father away from her would be devastating as Mr. Hiles is the only stable thing in her life.  Mr. Hiles urges the Court to adopt the Government's recommendation in this case and impose a probationary sentence considering his significant family obligations, his sincere and complete remorse, his early and consistent acceptance of responsibility, his unequivocal aid to the government, and the lack of a need to further deter him.

### C. The Kinds of Sentences Available

The sentencing guidelines do not apply in this case.  *See* Final PSR, paragraph 6.  The

Court should not consider any conduct to which Mr. Hiles did not plead guilty. The most probative evidence that Mr. Hiles should not receive active incarceration is that the Government is not asking for incarceration.

Largely because of his full cooperation with the government, his family obligations, and his sincere regret and remorse, Mr. Hiles asks that the Court adopt the recommendation of the Government and impose a term of probation with community service.

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered in this case. Defendant's financial condition is such that he cannot pay any significant fine. *See* PSR, paragraph 64; U.S.S.G. § 5E1.2(a) (fine not recommended if defendant unable to pay).

### D. The Need to Avoid Unnecessary Sentence Disparities

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. In the following cases the defendants were charged with and pled guilty to a misdemeanor and received no active incarceration when sentenced by this Honorable Court.

In *United States v. Anna Morgan-Lloyd,* 21-cr-00164 (RCL) (Jun. 28, 2021) Ms. Morgan-Lloyd was sentenced to probation. In *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) Ms. Ehrke was sentenced to probation. In *United States v. Danielle Doyle*, 21-cr-00324 (TNM) (Oct. 1, 2021) Ms. Doyle was sentenced to probation even though she entered the Capitol through a broken window and shouted at police officers. In *United States v. Jessica Bustle and Joshua Bustle,* 21-cr-00238 (TFH), ECF Nos. 42 & 44 Mr. and Mrs. Bustle were sentenced to supervised release with home confinement even though their actions post January 6, 2021, were worse than Mr. Hiles in that they downplayed the violence and the impact of the events on

lawmakers and democracy. Ms. Bustle even called for a revolution after January 6, 2021 and encouraged the rioters to be proud what they did on January 6, 2021.

In *United States v. Andrew Bennett,* Crim. No. 21-227 (JEB) Mr. Bennett was sentenced to three months home confinement and two years of probation. According to the government, who recommended probation with a short term of home confinement, Mr. Bennett espoused conspiracy theories about the election, was an admirer of the Proud Boys, and boasted about his conduct. According to the government, Mr. Bennett did not come to the rally in D.C. on a whim but planned it for months. On January 4, 2021, he posted to his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!"

The purpose of mentioning the above cases is solely to illustrate that there is nothing materially different about Mr. Hiles or his conduct that would justify a sentence of incarceration and such disparate treatment. The only major difference in this case is Mr. Hiles full cooperation in two other cases.

The courts have sentenced some January 6 misdemeanor cases to incarceration, but the nature and circumstances of those offenses, as well as the history and characteristics of the defendants in those cases, can be distinguished. In some cases the defendants were sentenced to active incarceration; however, in every one of those cases there were aggravating factors such as extensive planning prior to January 6, 2021 and being on active probation on January 6, 2021 *see United States v. Derek Jancart and Erik Rau*, 21-cr-00467, attempting to hide evidence of their involvement *see United States v. Matthew Mazzocco*, 21-cr-00054 (TSC)(October 4, 2021), bragging on social media about being in violent confrontation with Capitol Police Officers inside the Capitol *see United States. v. Reeder*, 21 CR 166(TFH), and none of those defendants showed remorse or contrition after January 6, 2021. Also, the prosecutors in those cases asked for

sentences that included active incarceration.

Mr. Hiles was far more cooperative with law enforcement, did not attempt to hide any evidence, in fact produced evidence and has been a remorseful law abiding citizen since January 6, 2021. Ms. Dorhmann went as far to say "no previously sentenced defendant has provided assistance of the degree provided by the defendant in this case." Government's Sentencing Memorandum at 27. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Hiles' conduct and characteristics. As suggested by U.S. Probation in its sentencing recommendation, Mr. Hiles' actions fall on the low-end of the spectrum that day and his actions after January 6, 2021, speak volumes of his remorsefulness and willingness to accept responsibility. Sentencing Recommendation, ECF No. 33 at 2.

## VI. **CONCLUSION**

Considering all the applicable factors the Court will consider, Mr. Hiles respectfully moves this court to impose a sentence of 12 months probation with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Hiles as an individual and account for his unique failings, positive attributes, and positive behavior after January 6, 2021.

Respectfully submitted,

By: _____/s/_____
ALEXANDER H. BELL
Admitted Pro Hac Vice
Virginia State Bar No. 84859
555 E. Main St., Ste. 1102
Norfolk, VA 23510

Phone: 757-651-5017
Facsimile: 757-257-7432
Alex@AlexBellLaw.com

AND

Charles R. Haskell, Esquire
District of Columbia Bar No. 888304007
641 Indiana Avenue NW
Washington, DC 20004
Telephone: (202) 888-2728
Charles@CharlesHaskell.com

## CERTIFICATE OF SERVICE

I hereby certify on the 29th day of November, 2021 a copy of same was delivered to the parties of record, by email pursuant to the Covid standing orderand the rules of the Clerk of Court.

/s/
Alexander H. Bell